## John Thompson *v.* John S. Ide.

The payees of a note, who were New York stockbrokers, had received it from the defendant as collateral security for any balance which might accrue in their favor, in the course of his stock transactions, carried on through them; and a large balance, far exceeding the amount of the note, had accrued in their favor growing out of stock transactions not proved to be impeachable under the New York statutes against stock-jobbing and gambling in stocks. In this state of things the plaintiff, who was an execution debtor of the defendant, and for the purpose of attaching thereon in the hands of the plaintiff's attorney the amount which he might pay on the execution, received the note indorsed in blank by the brokers, after it was overdue, under a contract to sue it in his own name, with the right to take to his own use, at the rate of fifty per cent., so much of the judgment he should recover as he might wish to use, — he paying the costs of collection on what he might take, — and to transfer the balance of the judgment to the brokers.

*Held,* in a suit on the note, that the transfer of the note could not be objected to by the defendant as void for champerty; and that, although the note was subject in the hands of the plaintiff to all the defences that it would have been had it been sued by the brokers, as well from the character of the transfer as because transferred when overdue, — yet that it was supported by the legal portion of their balance of account against the defendant exceeding its amount, — although a portion of the balance grew out of stock transactions carried on by them for the defendant in which the sellers had

not the stock to deliver; there being no proof that a general scheme was entered into between the brokers and the defendant to violate, in their transactions, the laws of New York in regard to stock-jobbing and gambling, or that the brokers were cognizant of the objectionable portion of the defendant's stock transactions, that the sellers had not stock to deliver.

ASSUMPSIT by indorsee against the maker of a negotiable promissory note for $5,000, dated New York, June 9, 1857, and payable to the order of E. Whitehouse, Son & Morison, ninety days after date.

At the trial under the general issue before the court, to whom by agreement the case was submitted in fact and law, it appeared in substance that Ide having recovered judgment against Thompson for a considerable sum of money, execution for which was in the hands of the officer, Thompson paid the amount to the attorney of Ide, and forthwith attached the amount so paid in his hands upon the writ in this suit; he, Thompson, having acquired the control of the note here sued for that purpose, under an agreement with E. Whitehouse, Son & Morison, the payees of the note, the purport of which appeared from the two following receipts : —

" New York, Dec. 12, '57.

" We have this day transferred to John Thompson, John S. Ide's note for 5,000 dollars, dated June 9th, '57, at ninety days, to be sued, and judgment recovered in his name, upon the conditions set forth in his receipt to us of this date.

(Signed) " E. WHITEHOUSE, SON & MORISON."

" New York, Dec. 12, 1857.

" Received of E. Whitehouse, Son & Morison, John S. Ide's note for $5,000, dated June 9th, '57, at ninety days. I am to sue it in my own name, or otherwise; and not to use their name, and to pay them for such amount thereof as I may use fifty cents on the dollar, and transfer to them the judgment for the balance not used by me ; — the judgment is to be subject to my control until this transfer is made ; and for the amount to be paid by me under this arrangement I am to give them satisfactory paper at four months, dating from the time that

such amount shall be actually secured and taken by me; I to pay costs of collecting on the amount I use.

(Signed) " JOHN THOMPSON."

The note in suit was originally made and delivered by the defendant to E. Whitehouse, Son & Morison on the 9th day of June, 1857, as collateral security for any balance which might accrue to them against him, whilst carrying for sixty days for him stocks then held or coming due on contract, they acting for him as his brokers in the purchase and sale of stocks for him in the New York market. Much evidence was submitted to the court for the purpose of showing that these transactions were stock-jobbing and wagering transactions on the prices of stock; and that for that cause the consideration of the note was illegal and void under the statutes of New York, where the note was made. The transactions of the firm of E. Whitehouse, Son & Morison for the defendant, were numerous, and the final balance of account in their favor against him for which the note sued stood as security was large, being some $9,800; and it appeared that the differences due to them on stock-transactions not proved to be illegal, would more than absorb the amount of the note and interest; and although one or two of the transactions giving rise to a portion of the balance were of an objectionable character, the result of the proof was, evidence being submitted on both sides, that E. Whitehouse, Son & Morison were not proved to have been cognizant that the sellers did not own all the stocks which they contracted to deliver to them for the defendant.

*Pitman,* with whom was *Payne.*

1st. The transfer of this note by E. Whitehouse, Son & Morison to the plaintiff was void for champerty, and conveyed no title. 2 Parsons on Contracts, 263; *Halloway* v. *Love,* 7 Porter (Ala.) Rep. 488; *Martin* v. *Amos,* 13 Iredell, 201; *Byrd* v. *Odem,* 9 Ala. 764; *Small* v. *Mott,* 22 Wend. 405; *Saterlee* v. *Frazer,* 2 Sandf. Sup. Ct. Rep. 141; *Benedict* v. *Stewart,* 23 Barb. 424.

2d. The note itself in the hands of E. Whitehouse, Son & Morison is void under the statutes of New York directed

against stock-jobbing and gaming. Rev. Stats., N. Y., art. 2, §§ 6, 7, p. 116, (ed. of 1852); Ib. Part 1, tit. 8, ch. 22, § 8; *Dennison* v. *Cook,* 12 Johns. 376; *Frost* v. *Clarkson,* 7 Cowen, 24; *Staples* v. *Gould,* 5 Sandf. Sup. Ct. Rep. 411, 415; S. C. 5 Selden, 520. See also *Falkimer* v. *Brinckerhoff,* 20 Johns. 397; *Austin* v. *Bell,* Ib. 449; *Leavitt* v. *Blatchford,* 5 Barb. 9, 37, n.; *Jarvis et al.* v. *Peck et al.* Hoff. Ch. R. 479, 486; *Bank of U. S.* v. *Owens et al.* 2 Peters, 538; *Burt* v. *Place,* 6 Cowen, 431; *Nellis* v. *Clark,* 20 Wend. 24, 27; S. C. 4 Hill, 424. As to the act against gaming, see *Grizewood* v. *Blane,* 20 Eng. L. & Eq. Rep. 290. The plaintiff having, as appears by his receipt, bought the note when overdue, it is subject in his hands to this defence.

3d. As Thompson received the note three months after it was due, he took it subject to the same equities under which it was held by E. Whitehouse, Son & Morison, as collateral security merely, for their balance against Ide under a special agreement to carry certain stocks for him for sixty days, which the evidence shows that they broke; and if this were not so, they had no power to part with the collateral until they had first demanded their balance of Ide, and notified him that they were about to sue the security to satisfy it. *Cortelyon* v. *Lansing,* 2 Caines's Cas. in Error, 200; *McLean* v. *Walker,* 10 Johns. 471; *Garlick* v. *James,* 12 Ib. 146; *Dykers* v. *Allen,* 7 Hill, 497; *Stearns* v. *Marsh,* 4 Denio, 227; *Wheeler* v. *Newbold,* 2 Smith's Cas. on Appeal, 393; *Morris Canal and Banking Co. et al.* v. *Fisher,* 1 Stockt. Ch. R. 667; Story on Prom. Notes, § 284.

*Currey,* for the plaintiff.

There was no champerty. The plaintiff took a legal title to the note, with a right to purchase such portion of the judgment recovered as he might need, at a stipulated rate, he paying the costs on such portion as he might purchase. 4 Blacks. Com. 134; 2 Parsons on Contracts, 262; *Falkimer* v. *Brinckerhoff,* 3 Cowen, 647–649. Except in one instance there is no proof that the sellers had not power to transfer the stock sold, and in no instance are the brokers affected with knowledge that the sellers did not own the stock which they contracted to deliver. *Frost* v. *Clarkson,* 7 Cowen, 24.

Thompson *v.* Ide.

AMES, C. J.  Upon examination, we can find no case in which the transfer of a negotiable promissory note has been held to be void for champerty, and do not feel disposed to make such a case under the facts here disclosed to us.  The plaintiff took from E. Whitehouse, Son & Morison the legal title to this note of which they are the payees, by their delivery of it to him with their indorsement in blank.  As their mere agent and trustee he might have maintained an action upon it against the defendant, subject to all defences to which it would have been liable in their hands; and the defendant, if *they* were content, could not object to his want of beneficial interest.  But the plaintiff, in addition to his legal title, has stipulated, at a certain price and mode of payment, for such an amount of the judgment he might obtain as he might be able to use; he to pay the costs of collection on such amount.  Had he bought half, or the whole of the note at such rate, certainly the contract would not have been champertous; and we cannot see why it should become so, because at a fixed rate he is entitled, under his contract, to an election as to the portion he will make his own; he paying only so much of the costs of collection as will be proportionate to the amount he shall conclude to take.  He unquestionably took a transfer of it to sue for the common benefit of himself and the transferrers; the amount of the interest of each in the judgment, and of the costs which each should pay for obtaining it, to depend on the amount of the judgment which he should so use and make his own at the agreed rate.  Considering that the subject of this contract is a chose in action which the policy of the law allows to be legally assignable, we do not feel disposed to fetter this leading quality of such property by nice inquiries or refined distinctions.  The rights of the defendant, at least, are fully protected by holding under such a contract of transfer, as well as because the plaintiff purchased the note when overdue, that in his hands it is subject to all the equities between the defendant and the payees, E. Whitehouse, Son & Morison.

It is argued that these equities require us to hold the note void under the statutes of New York, where it was made, against stock-jobbing and gambling.  The statutes in question apply

19 *

only to cases where neither party intends to deliver or accept the stock or shares bargained for, but merely to pay differences, according to the rise or fall of the market, at the time when the bargain requires the differences to be adjusted. It is said that E. Whitehouse, Son & Morison acted as the defendant's brokers in such gambling transactions, and took the note in question as security for any balance which might accrue to them therein. The evidence shows a large balance, far exceeding the amount of this note, due to these brokers on account of the stock transactions of the defendant carried on through them; but, except in one or two instances not materially affecting the balance, fails to prove that the transactions were of the illegal character supposed; and, unless indeed we are to follow our own conjectures rather than the evidence, fails to show, even in the excepted instances, that the brokers were aware that the sellers of the stock to the defendant through them had it not to deliver, when it might be called for. There being no proof of any general scheme between his brokers and the defendant to violate the laws of New York directed against stock-jobbing and gambling in stocks; and their balance being far more than sufficient to require the application to it, for their reimbursement, of the whole amount of this note, we can see no reason why they should not recover the whole of it from the defendant, and none, therefore, why the plaintiff should not, suing and acting in this suit, as he does, partly for himself and partly as their agent and trustee.

The evidence clearly proves that the stocks of the defendant sold by his brokers at a loss, although not carried by them sixty days, were sold by his direction; and that he never objected until this suit, though the account was duly presented to him, to the balance now claimed. By the very form of the collateral note the brokers were empowered to transfer it; which distinguishes this case from those cited for the defendant where no such power accompanied the pledge; and the rights of the defendant are sufficiently protected by holding, as we do under the circumstances of this case, that the plaintiff, as indorsee of the note, can recover no more thereon than the defendant's brokers would have been entitled to do according to the terms

of their agreement. The amount of their balance equally limits his right of recovery and theirs; but as this exceeds the amount of the note and interest, let judgment be entered for the plaintiff for this latter sum.